## MILLER v. STINE, Judge, et al.

### No. 13489.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 20, 1936.

Rehearing Denied Dec. 18, 1936.

See, also, 91 S.W.(2d) 315.

Benson & Benson, of Bowie, for relator.

Homer B. Latham and T. H. Yarbrough, both of Bowie, for respondents.

SPEER, Justice.

This is an application to the court by Estell Miller, a feme sole, for a writ of mandamus against the Honorable Vincent Stine, judge of the Ninety-seventh judicial district court, requiring him to enter judgment in favor of relator in a case pending in that court bearing docket No. 8430, styled Estell Miller v. R. L. McClure.

It is stated in the application that on April 15, 1933, the cause was tried to a jury upon three special issues; that the jury did not answer the first issue, but did answer the other two; that the court declared a mis-

trial in the case because the first issue was not answered. The contention is here made that an answer to the first issue was immaterial and that the answers to other issues entitled relator to a judgment.

It becomes necessary for us to state the nature of the controversy in the district court to arrive at a proper conclusion of the question before us.

The plaintiff instituted a suit declaring on three notes in the sums of $100, $200, and $260, respectively, dated June 28, 1930, all of which were past due when suit was filed. It was alleged that the notes were executed by R. L. McClure as a part of the purchase money in a conveyance of Dr. E. W. Wright to R. L. McClure of certain real estate, the description of which involves no controversy, and that a vendor's lien was reserved in the deed to secure the payment of the notes.

The defendant McClure answered by an allegation that prior to April 19, 1930, he was indebted to Dr. E. W. Wright and, at the request of Dr. Wright, he and his wife, by deed dated April 9, 1930, conveyed the land to Dr. Wright with a definite understanding and promise that it should be reconveyed and a vendor's lien would be retained in such reconveyance securing the notes later sued on; that pursuant to the agreement Dr. Wright did reconvey the land to defendant by deed dated June 28, 1930, reciting the vendor's lien sued on as a part of the consideration; that defendant was a married man and the land was his homestead at the time and had been for many years prior thereto; that the conveyance was similated and was in reality a mortgage on defendant's homestead and therefore void, and prayed that plaintiff take nothing by reason of the suit and that the notes and pretended lien be canceled.

Plaintiff in replication alleged the bona fides of the original sale and conveyance by McClure to Wright; reciting the consideration paid at the time as well as the reconveyance to McClure.

Plaintiff further alleged that the land was not the homestead of McClure and had not been for some time prior to the date of the transaction in question; in this connection it was alleged that McClure's wife and children had abandoned him prior to the date of the first conveyance, with the avowed intention of the wife to not again live with him, and that she and the children had resided in another county continuously since

such abandonment; that the land was the separate property of R. L. McClure and after abandonment by the wife he could and did make the contracts mentioned with reference to the land, irrespective of the homestead claims; that even if it was an attempt to place a mortgage on the land, which was denied, the lien was valid, having been created by the husband after being permanently abandoned by the wife.

The special issues submitted to the jury at the trial were:

"1. Do you find from a preponderance of the evidence that it was agreed between R. L. McClure and E. W. Wright that R. L. McClure would deed the land to E. W. Wright as security for debt and that Wright would then deed it back to McClure and retain vendor's lien notes?" (This question was not answered by the jury.)

"2. Do you find from a preponderance of the evidence that at the time of the execution of the deed to E. W. Wright that Mrs. McClure had left her husband and had formed the intention not to return to and live with him?" Answered, "Yes."

No number is shown on the next issue, which reads:

"Do you find from a preponderance of the evidence that at the time of the execution of the deed by defendant and wife to E. W. Wright, defendant's wife had left the land in suit as her homestead and had formed an intention not to return to and occupy said property as her homestead?" Answered: "Yes."

Upon the return of the verdict by the jury, defendant moved the court that because of the failure of the jury to answer the first issue, a mistrial be declared. The plaintiff moved for a judgment on the issues answered, irrespective of the one not answered. The court denied plaintiff's motion and sustained that of the defendant and declared a mistrial.

The sole question before us is: Should the trial court have entered judgment for plaintiff, based upon the two issues answered?

There are other facts than those found by the answered issues which would have been helpful to us in this case, such as whether or not the abandonment by the wife of the husband was because of the conduct of the husband, or whether their living apart was by mutual consent, yet we must accept the record as it stands, that is, that the wife

had left her husband and formed the intention not to return and live with him, and that she had likewise left the land in controversy as her homestead and had formed the intention not to again occupy and use it as such.

The pleadings of all parties show the land upon which the lien is asserted was the separate property of the husband, R. L. McClure. The wife is not a party to the pending suit, and has never asserted any right in the land so far as the record shows.

The answer of respondent to the application for the writ here alleges that the uncontradicted evidence upon the trial showed the land was the separate property of R. L. McClure; that McClure and his family had lived on the property as their homestead for a number of years up to the time the wife went away in 1928; that there was no testimony in the case showing why Mrs. McClure left her husband and the premises, nor that she had grounds against her husband for divorce. That there was no testimony offered upon the trial that the husband contributed anything to the support of the wife for the first year and a half, but that it was shown he had not contributed anything to her support subsequent to the expiration of that time, during her absence, which had continued to the date of the trial. Respondent also answered that he felt unjustified to render judgment on the issues answered, for the reason the parties were still husband and wife and that the husband still had the moral and legal obligation to support his wife whether he was doing so or not.

The matters stated in respondent's answer are not controverted by relator, and R. L. McClure, by his counsel, has answered here and joined issue with relator and adopted the answer of respondent Stine. It follows that we may look to these pleadings as reciting the facts in so far as they will aid us in determining the rights of the parties.

■ At the outset we would do well to bear in mind that in so far as the terms "homestead" and "exemptions" are concerned, the homestead is exempt to the husband or wife from forced sale, so long as it is used as such after the death, insanity, or abandonment by the other spouse—Hall v. Fields, 81 Tex. 553, 558, 17 S.W. 82—but it does not follow that the constitutional and statutory inhibitions of the sale or incumbrance of it, except in the manner therein provided, are applicable after the happening of the incidents above mentioned.

■ We believe, and so hold, that with the uncontroverted facts before the trial court, as above referred to, the two issues that were answered, irrespective of the one not answered, furnish a sufficient support for a judgment in favor of relator.

■ It is the unquestioned legal duty of the husband to support his wife. Looking to a fulfillment of this duty, the law has wisely lent its aid by protecting the homestead to him, as the head of the family, against creditors. Under this protection, he is enabled to furnish her a place to live and contribute what she may to make it the home of the family. Since the duty of support and maintenance is upon him, it is but right and proper that he should have, and does have, the right to select the domicile of the family. Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90; Hanes v. Hanes (Tex.Com.App.) 239 S.W. 190; Kelly v. Nowlin (Tex.Civ.App.) 227 S.W. 373; Tackaberry v. City National Bank, 85 Tex. 488, 22 S.W. 151, 299; Schulz v. Whitham & Co., 119 Tex. 211, 27 S.W.(2d) 1093. It was held in Haymond v. Haymond, supra, that the selection by the husband of the domicile must be done fairly and without fraud on the wife, taking into consideration her rights, health, and comfort, and his own ability to supply them. The same principle is announced in Speer's Marital Rights (2d Ed.) § 73.

■■ While it is the duty of the husband to support and maintain the wife, yet this responsibility does not extend to any other place than the one provided by him for her, unless by his own wrongful acts he has compelled her to seek refuge at another place. Morgan v. Hughes, 20 Tex. 141, 142. Or, he may by consent agree for her to reside elsewhere than in his home; this, however, is equivalent to his making the choice of the other domicile. Schulz v. Whitham & Co., supra.

From what we have said, it will be seen that R. L. McClure had provided upon his own lands a home and domicile for himself and wife, and that they had dedicated it as such by residing thereon from 1920, when they were married, until 1928, when she went away. There is nothing in the record to indicate that Mrs. McClure left because of any wrongful conduct of her husband, nor that her absence was the result of his consent or agreement for her

to reside elsewhere than at the time he had provided for her. Under such circumstances, it cannot be said that the husband was under any legal obligations to support her, and the fact that he did not do so can bring no just criticism upon him. From the answer of Judge Stine, the respondent here, it seems the question last discussed prompted him to doubt his right to render judgment upon the facts shown.

It has been frequently held in this state that the husband who has been permanently abandoned by the wife, without fault on his part, may sell or hypothecate his separate lands, even though it be the homestead, without the joinder by the wife.

It was held in the case of Murphy v. Lewis (Tex.Civ.App.) 198 S.W. 1059, that Lewis could not defeat the validity of his deed of trust given on his separate lands to secure a debt upon the grounds that he was a married man at the time of the execution of the instrument and was occupying the lands as a homestead, his wife having abandoned him with the intention never to return.

In Mabry v. Kennedy, 49 Tex.Civ.App. 45, 108 S.W. 176, writ refused, it was held that, by the voluntary abandonment of her husband, without any just and reasonable cause, and without the intention of returning to him, the wife forfeits her homestead rights, and the land being community property, the husband, after such abandonment, has a lawful right to encumber the same, and to pass the fee-simple title thereto.

In Mann v. Wilson, 39 Tex.Civ.App. 111, 86 S.W. 1061, writ refused, it was held that after the wife had permanently abandoned the husband, he could convey the homestead and pass good title by such instrument without being joined therein by the wife.

Judge Stine, in his answer here, stated that his reluctance to enter judgment on the issues as answered was prompted by the testimony in the case to which we have referred, based upon the holding of the Supreme Court in the case of Schulz v. Whitham & Co., 119 Tex. 211, 27 S.W.(2d) 1093, cited by us above on another point. A careful reading of that case will disclose, we think, that it is not in conflict with, nor does it overrule or modify, the principles herein announced by us and the other courts in the cases mentioned, in some of which it will be observed writs of error were refused. In the Schulz v. Whitham & Company Case, supra, it will be noted that the court held Dr. Vick, who attempted to create a mechanic's lien on the property occupied by him as a homestead, was living separate and apart from his wife by the mutual consent of both, without any legal fault of his own or even of the wife (if such could be said of both), amounting, under the rules of law above mentioned, to an assent upon his part for her to occupy a domicile other than the home he had provided, and at all times recognizing his legal duty to support and maintain her at such place, which duty was done and performed by him. Chief Justice Cureton, speaking for the court, many times referred to and emphasized these facts, evidently basing his conclusions upon the fact that Dr. Vick had consented to his wife living at the domicile chosen by her and that he discharged his obligation of support as a result of such consent. If the Supreme Court had intended to announce a new and different principle of law, inconsistent with that which has so often been stated by the Court of Civil Appeals with the sanction of that court, it naturally would have referred to such rule and the cases holding it. This was not done, and we do not believe that opinion is susceptible of a construction other than the one given it by us.

The application for writ of mandamus is hereby granted, and judgment is here rendered, setting aside the order of the honorable district court overruling relator's motion for judgment and declaring a mistrial, and the said honorable district court is hereby directed to enter judgment, nunc pro tunc, for relator as prayed for, without prejudice to any rights defendant may have, after the entry of judgment by the court under this order.